UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                    )

KRSTAFER PINKERTON, et al.,     )

          )

     Plaintiffs,       )

          )

     v.         )     Civil Action No. 25-3127 (PLF)

          )

DEBRA REINHARDT, et al.,     )

          )

     Defendants.     )

———————————————————————)

OPINION

Plaintiffs filed their Complaint ("Compl.") [Dkt. No. 1], pro se, on September 11, 2025, and Emergency Motion for a Temporary Restraining Order for Expedited Preliminary Injunction Proceedings ("Emerg. Mot. Temp. Rest. Ord.") [Dkt. No. 36] on January 28, 2026. Defendants subsequently filed Motions to Dismiss [Dkt. Nos. 8, 12, and 14]. For the reasons explained below, both the Emergency Motion [Dkt. No. 36] and the defendants' Motions to Dismiss [Dkt. Nos. 8, 12, and 14] are denied. Instead, the case will be transferred to the U.S. District Court for the Middle District of Florida.

I.  STATEMENT OF FACTS

Krstafer Pinkerton, Robin Devine, Danielle Jenkins, Tim Jekins, Dan Foss, and Beth Foss (together, "plaintiffs") filed this seven-count complaint against New Atlantis Club Condominium Association ("New Atlantis"), Point Brittany Administrative Corporation ("Point Brittany"), Resource Property Management ("RPM"), and Debra Reinhardt (together

"defendants").[1]  Plaintiff Pinkerton is a citizen of Oregon and brings this action as Next Friend

for "elderly and disabled Floridians," Compl. ¶ 28; plaintiff Devine is a citizen of Florida, id.

¶ 29; the Jenkins plaintiffs are citizens of Florida, id. ¶ 30; and the Foss plaintiffs are citizens of

Florida, id. ¶ 31.  Remaining plaintiffs are condominium owners at New Atlantis Club or Point

Brittany, both of which are owned and operated by defendant RPM, a community association

management firm.  See id. ¶¶ 29, 32, 33, 43.  Defendant New Atlantis is incorporated and has its

principal place of business in Florida, id. ¶ 32; defendant Point Brittany is incorporated and has

its principal place of business in Florida, id. ¶ 33; defendant RPM is incorporated and has its

principal place of business in Florida, id. ¶ 34; and defendant Debra Reinhardt, the owner of

RPM, is a citizen of Florida, id. ¶ 35.

Plaintiffs' complaint focuses on what they allege was an unlawful loan that the

homeowners' association took out without the appropriate consent from homeowners.  Plaintiffs

allege that during a homeowners' meeting on April 14, 2025, after discussion about a $3.3

million loan to be used for renovations, repairs, and general property expenses, defendants

altered the reported total of the loan from $3.3 million to $3.5 million, without a

contemporaneous vote.  See Compl. ¶ 52.  The homeowners immediately moved to challenge the

loan as statutorily improper in the absence of a membership vote under the Condo Act.  Id.

¶¶ 53-54; see Compl. Ex. B1.  The chair of the homeowners' association allegedly ignored the

_____

[1]    In their Complaint heading, plaintiffs also name as defendants Florida Chief
Executive Officers of Management Companies as well as unspecified "John Does 1-150" and
"Jane Does 1-150."  The unidentified Jane and John Doe defendants represent "unknown
legislators, lobbyists, attorneys, notaries, bankers, and officials who knowingly participated in
the racketeering enterprise."  Compl. ¶ 40.  The body of the Complaint lists as additional
defendants Rabin Parker Gurley, P.A., Bennet Rabin, Esq. and Popular Bank.  Compl. ¶¶ 36, 37
and 39.

motion, moved to end the discussion, and threatened to shut down the meeting, despite the objections.  Compl. ¶¶ 54-55; see Compl. Ex. B1.

Plaintiffs also allege that the defendants engaged in several unlawful banking transactions on behalf of the homeowners' association.  They assert that "since at least 2020," defendants created, changed, and maintained various "ghost operating accounts" at Popular Bank that were not properly noticed depositories.  Compl. ¶ 43.  According to plaintiffs, various loan documents and corporate records show struck-out office names, altered signatures, and general "entity-name corruption."  Id. ¶ 44.  Plaintiffs assert that such transfers and deposits were later used to fraudulently mask the location and movement of member assessment funds.  Id. ¶¶ 45- 47.  Furthermore, plaintiffs allege that "RPM fabricated a $1.5 [million] hurricane estimate without licensed contractors and imposed unlawful assessments on residents."  Id. ¶ 92.[2]

Plaintiffs further allege "lobby capture, regulatory entwinement, and the funding pipeline supporting to support policy outcomes" by the Florida Chief Executive Officers of Management Companies ("CEOMC").  Compl. ¶ 72.  Plaintiffs assert that CEOMC, RPM and the Florida Department of Business and Professional Regulation "operated alongside [RPM] and [Popular Bank] to shape statutory levers and conceal/normalize conflicted transactions later

---

[2]     Plaintiffs further argue there was statewide notary misconduct in Florida, thus inhibiting their prospects for redress on the state level.  Specifically, plaintiffs contend that multiple notaries at the Florida Department of Business and Professional Regulation were confirmed to have committed notary violations, but those cases were closed without a criminal referral.  See Compl. ¶¶ 63-67.  Outcomes were instead limited to letters of caution or resignations.  Id.  Plaintiffs contend that in taking these actions, the state government is "shielding the enterprise rather than seeking justice."  Id. ¶ 64. Plaintiffs allege that the insulation of such notaries with confirmed violations allowed for loan contracts, guardianship petitions, and estate instruments with defective notarial foundations to circulate as facially valid," thereby frustrating judicial scrutiny and possible redress for plaintiffs and others similarly situated.  Id. ¶¶ 68-69.

implemented at the association level." Id. ¶ 77.  Plaintiffs posit a resultant "documented loop" of

"policy authorship and legislative success; regulatory non-intervention; and a sustained finance

channel supporting the same outcomes." Id. ¶ 78.

Lastly, plaintiffs allege a coordinated retaliation campaign by defendants,

including the delivery of a cease-and-desist letter sent to plaintiffs Pinkerton and Robin Devine,

threatening civil and/or criminal action "unless disclosures ceased."  Compl. ¶ 81.  The

complaint also states that Devine received certified mail one week after the cease-and-desist

letter reiterating threats of litigation and this "demonstrat[ed] the use of the U.S. Mail as an

intimidation tool." Id. ¶ 82.  Plaintiffs contend that around the same time, "counsel" referred Mr.

Pinkerton to the "State Attorney/Sheriff" for "cyberstalking" after Mr. Pinkerton disseminated

evidence of banking and amendment fraud claims, intended to "discredit and chill speech" and

that were "unsupported by facts." Id. ¶ 83.  Owners asking for information were excluded from

meetings or threatened with fines or foreclosure.  Id. ¶ 84.

While not entirely clear from the complaint, plaintiffs group their allegations into

seven counts against defendants collectively.[3]  Count I asserts a claim for Mail Fraud under 18

U.S.C. § 1341.  Compl. ¶¶ 105-11.  Count II alleges Wire Fraud under 18 U.S.C. § 1343.  Id.

¶¶ 112-17.  Count III claims Bank Fraud under 18 U.S.C. § 1344.  Id. ¶¶ 118-22.  Count IV

states a claim for Conspiracy Against Rights under 18 U.S.C. § 241.  Id. ¶¶ 123-25.  Count V

asserts Honest-Services Fraud under 18 U.S.C. § 1346.  Id. ¶¶ 126-30.  Count VI alleges

Obstruction of Justice under 18 U.S.C. § 1503, Witness Tampering under 18 U.S.C. § 1512, and

---

[3]     Counts I through VII are not specifically targeted at any individual defendants, but rather, at "Defendants" as a whole.

Records Obstruction under 18 U.S.C. § 1519.  Id. ¶¶ 131-35.  Count VII asserts Civil RICO under 18 U.S.C. §§ 1962(c) and (d).  Id. ¶¶ 136-45.

On October 27, 2025, defendants CEOMC, Reinhardt, and RPM filed their Motion to Dismiss [Dkt. No. 8] and a memorandum in support thereof ("Reinhardt Mot. Dismiss") [Dkt. No. 8-1].  On October 28, defendants New Atlantis and Point Brittany each filed separate Motions to Dismiss ("New Atlantis Mot. Dismiss") [Dkt. No. 12], ("Point Brittany Mot. Dismiss") [Dkt. No. 14].  On December 10, plaintiffs filed a Memorandum in Opposition to the Motions to Dismiss ("Plaintiffs' Opp.")  [Dkt. No. 26], and on December 17, defendants CEOMC, Reinhardt, and RPM, as well as Point Brittany, filed separate Replies to plaintiff's Opposition to the Motions to Dismiss.  [Dkt. Nos. 30, 31].  On January 28, 2026, plaintiffs filed a motion for a temporary restraining order, alleging that defendant Point Brittany's packet for the board meeting to be held on January 29, 2026 indicated that Point Brittany would be enforcing a "delegate vote only" posture for commercial-property "changes."  Emerg. Mot. Temp. Rest. Ord. ¶ 4 (a)-(d).  Such a voting regime would allow only for certain elected representatives to cast votes on homeowners' association matters, thus excluding plaintiffs and other owners similarly situated from voting on Point Brittany property decisions.  See id. ¶ 5. CEOMC, Reinhardt, and RPM collectively filed a Response to the Emergency Motion, ("Reinhardt Lim. Resp. Emerg. Mot.") [Dkt. No. 38], as did Point Brittany ("Point Brittany Lim. Resp. Emerg. Mot.") [Dkt. No. 39].  Point Brittany's response asserted that the meeting in question had been cancelled, rendering any emergency relief unnecessary and moot.  Point Brittany Lim. Resp. Emerg. Mot. at 1.

On February 13, 2026, this Court issued an Order to Show Cause as to why this case should not be transferred to the U.S. District Court for the Middle District of Florida, where all the defendants reside or do business and where the events described in the complaint took place. Order [Dkt. No. 40]. On February 20, Pinkerton filed a Response to the Order. ("Resp. to Show Cause Order") [Dkt No. 42]. On March 19, Pinkerton filed a Notice of Defendants' Misrepresentations to the Court [Dkt. No. 45], alleging that although defendants asserted that the pertinent meeting was "cancelled," thereby mooting any emergency or threat of irreparable harm, further meetings were in fact held, substantive governance action was taken and an additional board meeting was scheduled, in which "litigation-related ratifications" were on the agenda. Notice of Defendants' Misrepresentations to the Court at 1-2. Mr. Pinkerton's Notice was further accompanied by two Supplements. [Dkt. Nos. 46 and 47]. Mr. Pinkerton subsequently filed several other supplemental documents, namely, a Notice of Attorney Misconduct, State Regulatory Closure During Active Federal Litigation, and Consolidated Pattern Inference Framework [Dkt. No. 48], a Notice of Filing of Supplemental Analytical Exhibit Anatomy of an Enterprise: A RICO Jurisprudential Analysis of the Florida Condominium Governance Enterprise [Dkt. No. 49], and a Notice of Filing Pursuant to Rule 1006 of the Federal Rules of Evidence1006 [Dkt. No. 50]. Defendant Point Brittany filed a Notice that this Matter is Fully Briefed and Ready for Adjudication [Dkt. No. 51], to which plaintiffs responded with their Lead Plaintiffs' Response [Dkt. No. 52]. Plaintiffs' most recent filing was their Notice of Interstate Governance Structures, Federally Connected Housing-Finance Systems, and District of Columbia Nexus Relevant to Venue [Dkt. No. 53].

## II. MOTIONS TO DISMISS

In their motions to dismiss, defendants all argue that venue is improper in this Court and that this Court does not have jurisdiction to decide the issues before it.[4]  Reinhardt Mot. Dismiss at 2-12; New Atlantis Mot. Dismiss at 7-11; Point Brittany Mot. at 1-5. Defendants argue that the Court should dismiss the case based on lack of personal jurisdiction under Rule 12(b)(2) and lack of venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Defendants also argue that plaintiffs have failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Reinhardt Mot. Dismiss at 14-24; New Atlantis Mot. Dismiss at 3-7; Point Brittany Mot. at 6.  After careful consideration, the Court agrees that it lacks personal jurisdiction over the defendants and will transfer the case to the U.S. District Court for the Middle District of Florida.[5]

### A.  Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), plaintiffs must establish "a factual basis for the exercise of personal jurisdiction over the defendant."  Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990).  The plaintiffs bear the burden of establishing a prima facie showing that the court has personal jurisdiction over the defendants. Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005).  "The

---

[4]    In addition to these arguments, the Reinhardt and New Atlantis defendants also assert that Mr. Pinkerton has no standing to bring this civil action on behalf of four named "elderly and disabled residents deprived of rights" he says he represents as next friend. Reinhardt Mot. to Dismiss at 2; New Atlantis Mot. to Dismiss at 10-11.  Mr. Pinkerton does not explain further in the body of the complaint or TRO motion how he meets the requirements for next friend status for these named residents.  This Court need not reach this issue to resolve the question of proper venue for this action.

[5]    Because the Court resolves the case on grounds of lack of personal jurisdiction and venue, it does not reach the failure to state a claim arguments under Rule 12(b)(6).

court should resolve factual discrepancies in favor of the plaintiff," but plaintiffs "must allege specific acts connecting [the] defendant with the forum." Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005); First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988) (internal quotation omitted). "Conclusory statements . . . do not constitute the prima facie showing necessary" for plaintiffs to carry their burden, and the "'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction." First Chicago Int'l v. United Exch. Co., 836 F.2d at 1378-79.

It is a "cardinal principle that the district court is 'powerless to proceed' in the absence of personal jurisdiction." Khatib v. All. Bankshares Corp., 846 F. Supp. 2d 18, 25 (D.D.C. 2012) (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)). Personal jurisdiction over defendants can be established through general personal jurisdiction or specific personal jurisdiction. "General personal jurisdiction exists when a defendant's connections with the forum are so continuous and systematic as to render them essentially at home in the forum State." Adler v. Loyd, 496 F. Supp. 3d 269, 276 (D.D.C. 2020) (internal quotation omitted); Toumazou v. Turkish Republic of N. Cyprus, 71 F. Supp. 3d 7, 15 (D.D.C. 2014) (citing Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014). "For corporations, the paradigm all-purpose forums are their principal place of business and state of incorporation." Adler v. Loyd, 496 F. Supp. 3d at 276. When the defendant is an individual, courts look to "the individual's domicile." Urquhart-Bradley v. Mobley, 964 F.3d 36, 43 (D.C. Cir. 2020) (internal quotation omitted).

Here, the Court can quickly dispense with the question of general personal jurisdiction. None of the defendants reside or conduct business in the District of Columbia, and the complaint does not allege otherwise. See Compl. ¶¶ 32-40. As defendants themselves note,

8

they are all residents of Florida and there are no claims of "continuous and systematic" contacts with the District of Columbia.  See Adler v. Loyd, 496 F. Supp. 3d at 276 (internal quotation omitted); Reinhardt Mot. Dismiss at 4-8; New Atlantis Mot. Dismiss at 7-10; Point Brittany Mot. Dismiss at 1-3.  Plaintiffs' assertions, "even if true, fall woefully short of demonstrating that the [defendants are] 'at home' in the District of Columbia."  Toumazou v. Turkish Republic of N. Cyprus, 71 F. Supp. 3d at 15.

Having established that the Court has no general personal jurisdiction, the Court next turns to the plaintiffs' specific personal jurisdiction assertions.  In contrast to general jurisdiction, "[s]pecific personal jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  Adler v. Loyd, 496 F. Supp. 3d at 276 (internal quotation omitted).  Specific jurisdiction "requires a nexus between [the defendant's] particular contact with the District of Columbia and the claim that the plaintiff asserts."  Toumazou v. Turkish Republic of N. Cyprus, 71 F. Supp. 3d at 15.  "As with general personal jurisdiction, a plaintiff must show specific personal jurisdiction is proper under the forum's long-arm statute and due process."  Adler v. Loyd, 496 F. Supp. 3d at 276.

Here, plaintiffs allege that personal jurisdiction in this Court is achieved in two ways.  First, plaintiffs maintain that 18 U.S.C. §1965(b) allows for "nationwide service of process in civil-RICO cases where the ends of justice require a single forum."  Compl. at ¶ 13.  Plaintiffs assert that the alleged "enterprise spans Florida-New York-D.C., implicat[ing] a federally insured financial institution (Popular Bank), and used interstate mails/wires to injure Plaintiffs and retaliate against whistleblowers."  Id. ¶ 13.  Second, plaintiffs assert this Court's specific jurisdiction can be established by meeting the requirements set forth in the District of Columbia's Long-Arm statute.  Certain acts taken in the District of Columbia—namely

"transacting any business," "contracting to supply services," or "causing tortious injury in the District of Columbia"—may render a person liable to specific personal jurisdiction in the District.  See D.C. Code § 13-423(a)(1)-(3).

Taking the plaintiffs' arguments in turn, Civil RICO charges offer a unique statutory pathway to establish personal jurisdiction.  Section 1965(b) of the RICO Act provides for nationwide personal jurisdiction over domestic defendants in a RICO case, because such jurisdiction ensures that all co-conspirators "can be brought before one judge in a single forum." Oceanic Exploration Co. v. ConocoPhillips, Inc., Civil Action No. 04-332 (EGS), 2006 WL 2711527, at *12 (D.D.C. Sept. 21, 2006).  But for there to be personal jurisdiction under Section 1965(b), "[1] the court must have personal jurisdiction over at least one of the participants in the alleged multi-district conspiracy and [2] the plaintiffs must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators."  Id. (quoting Butcher's Union Local No. 498 v. SDC Inv. Inc., 788 F.2d 535, 538 (9th Cir. 1986)); see also FC Inv. Grp. LC v. IFX Markets, Ltd., 529 F.3d 1087, 1100 (D.C. Cir. 2008).  Plaintiffs "must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy."  Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (internal quotation omitted).

Plaintiffs have failed to plead facts that establish that this Court has personal jurisdiction, under a theory of conspiracy or otherwise.  The complaint does not allege any facts that would permit this Court to assert personal jurisdiction over any defendant in the District of Columbia, nor does it contain sufficient factual allegations about conduct or business activity by any defendant in the District.  See Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp., 640 F.3d 369, 372 (D.C. Cir. 2011) (denying personal jurisdiction where

plaintiffs did not allege any overt act that occurred in the District).  Neither would defendants meet the requirements to apply the District of Columbia's long-arm statute.  See Chrishon-Skinner v. Jones, Civil Action No. 24-2220 (RC), 2025 WL 1575674, at *1 n.1 (D.D.C. Jan. 8, 2025) (evaluating the application of the District's long-arm statute even though the pro se plaintiff did not cite the statute) (citing GTE New Media Servs. v. BellSouth Corporation, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).   Plaintiffs' allegations of the defendants' use of interstate mail and wires to injure plaintiffs are insufficient to show that the defendants have "transact[ed] any business," "contract[ed] to supply services," or "caus[ed]tortious injury in the District of Columbia." Compl. at ¶ 13; see D.C. Code § 13-423(a)(1)-(3) (emphasis added).

Plaintiffs' references to the necessity of an "independent federal forum" to adjudicate alleged Florida state government malfeasance or alleged conspiracy implicating a "federally insured" financial institution are insufficient to meet the requirements for personal jurisdiction in this Court.  See Compl. ¶¶ 13, 22; see also Lail v. U.S. Gov't, 771 F. Supp. 2d 49, 62 (D.D.C. 2011) (denying grounds for personal jurisdiction based on defendants receiving funding from and being regulated by the federal government under the government contracts doctrine); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C. Cir. 1983) (extending the government contracts doctrine to protect defendants whose only contact with the District of Columbia was lobbying activity before federal agencies to secure their own proprietary interests); see also Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp. 46, 50 (D.D.C. 1994) (finding that "[t]he fact that . . . defendants made filings with the FCC and the SEC in the District of Columbia does not, standing alone, provide jurisdiction here" under the

11

"government contacts exception").[6]  Accordingly, this Court has no personal jurisdiction over the individual defendants Deborah Reinhardt, nor the corporate defendants CEOMC, Fl. Inc., RPM, New Atlantis Club Condominium Association, or Point Brittany Association.[7]

### B. Venue

Having established that this Court has no jurisdiction over the defendants, the Court still must determine where venue lies for this action.  See Chrishon-Skinner v. Jones, 2025 WL 1575674 at *7 (explaining that a court may evaluate venue and transfer a case despite not having personal jurisdiction over defendants).  Venue may be established in three ways.  First, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Second, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).  Finally, venue is proper "if there is no district in which an action may

---

[6]      Even if plaintiffs asserted this Court's jurisdiction under the "government contracts" doctrine, the Court recognizes that "'a defendant's relationships with federal agencies do not enter the calculus of minimum contacts with the District of Columbia for jurisdictional purposes.'"  Ficken v. Rice, 594 F. Supp. 2d 71, 75 (D.D.C. 2009) (quoting Chrysler Corp. v. General Motors Corp., 589 F. Supp. 1182, 1196 (D.D.C. 1984)); see Bechtel & Cole v. Graceland Broadcasting Inc., 18 F.3d 953 (Table), Civil Action No. 92-7190 (CRR), 1994 WL 85047, *1 (D.C. Cir. 1994) ("The government contacts doctrine bars courts in the District of Columbia from exercising personal jurisdiction based solely on the defendant's contacts with a federal instrumentality."); Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d 119, 139 (D.D.C. 2004) ("'The District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government.'" (citation omitted)).

[7]      In addition to the named individual and corporate defendants, plaintiffs include as defendants in their complaint "John Does 1-150" and "Jane Does 1-150," who are "unknown legislators, lobbyists, attorneys, notaries, bankers, and officials who knowingly participated in the racketeering enterprise." Compl. ¶ 40.  Plaintiffs do not provide sufficient information that would allow the Court to identify how it would have jurisdiction over these unnamed and undescribed defendants.

otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3). See also Ananiev v. Wells Fargo Bank, N.A., 968 F. Supp. 2d at 123, 131 (D.D.C. 2013).

Plaintiffs contend that venue is proper in the District of Columbia through two separate pathways.  First, plaintiffs assert that under 18 U.S.C. § 1965(a)-(b), the civil-RICO statute permits consolidation of all enterprise members in one district when "the ends of justice" so require, and that a "centralized D.C. venue best serves preservation and nationwide tracing." Compl. ¶ 14.  Second, plaintiffs assert proper venue under 28 U.S.C. § 1391(b)(2) because "substantial events [were] directed" in the District, namely "filings with the FDIC and the DOJ," "interstate mail/wire transmissions into D.C.," "fraudulent loan/assessment materials and retaliatory communications" into the District, and that "the [defendants'] scheme impacted federal agencies headquartered" in the District of Columbia.  Id. ¶¶ 15, 26.  Plaintiffs also contend that venue is proper in the District of Columbia because the defendants' actions "implicate[] federal banking and program-integrity interests," namely the Federal Deposit Insurance Corporation, Small Business Administration, Federal Reserve Board, and Department of Justice, all of which are located in D.C.  Id. ¶ 23.  Plaintiffs further argue that the alleged "pattern of state-level non enforcement" justifies D.C. consolidation.  Id. ¶ 22.  Plaintiffs say that a centralized D.C. venue also "avoids piecemeal litigation, ensures consistent All-Writs preservation, and a unified . . . native-production protocol."  Id. ¶ 24. [8]  Furthermore, plaintiffs contend that a non-local forum "reduces the risk of local intimidation and conflict of interest." Id. ¶ 25.

---

[8]        Plaintiffs presumably are referencing the All Writs Act, which empowers federal courts to issue all "necessary or appropriate" orders in order to preserve their jurisdiction, protect evidence, or enforce legal duties where no other statute applies. See 28 U.S.C. § 1651.

Defendants counter that venue in this Court is improper, under both 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), because the Middle District of Florida is a more suitable alternative forum for the alleged claims and the "ends of justice" do not require the parties to be brought to this Court. Reinhardt Mot. Dismiss at 8, 10; New Atlantis Mot. Dismiss at 9; Point Brittany Mot. Dismiss at 4. Defendants also argue that the complaint's "substantive problems" mean that the claims would not survive if the case was transferred. Reinhardt Mot. Dismiss at 11; New Atlantis Mot. Dismiss at 9; Point Brittany Mot. Dismiss at 4. Defendants therefore maintain that dismissal, rather than transfer, is warranted under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Reinhardt Mot. Dismiss at 11; New Atlantis Mot. Dismiss at 9; Point Brittany Mot. Dismiss at 4.

"To prevail on a motion to dismiss for improper venue, under Rule 12(b)(3) of the Federal Rules of Civil Procedure, the defendant must present facts that will defeat the plaintiff's assertion of venue." Ananiev v. Wells Fargo Bank, N.A., 968 F. Supp. 2d at 129 (internal quotation omitted). "Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is the plaintiff's obligation to institute the action in a permissible forum." Id. (internal quotations omitted).

The Court concludes that venue is not proper in this district. Even assuming that plaintiffs are correct in their assertions of entanglement or enablement of tortious conduct by federal agencies headquartered in the District of Columbia, this does not demonstrate that the alleged unlawful conduct occurred in the District. See Middlebrooks v. England, Civil Action No. 05-0556 (JDB), 2005 WL 3213956, at *3, (D.D.C. Nov. 2, 2005) (holding that "formal authorization" of plaintiff's termination by headquarters did not establish venue and that, instead, it was "the balance of allegedly discriminatory events, including plaintiff's actual termination

and every instance of alleged workplace discrimination" that established venue); Robinson v. Potter, Civil Action No. 04-0890 (RMU), 2005 WL 1151429, at *4, (D.D.C. May 16, 2005) (noting that "[i]f the court were to interpret actions . . . of an administrative agency as decisions determined at the agency's headquarters then a plaintiff would always be able [to] establish venue wherever the principal office is located."). Although RICO is often "liberally construed" to dismantle ongoing enterprises that injure property rights, the complaint contains no allegations tying the defendants or their alleged conduct or transactions to the District of Columbia. Indeed, all of the alleged conduct occurred in Florida. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497 (1985). For these reasons, venue is not proper in this Court.

When venue is improper, the district court must either dismiss the case or – if it is in the interests of justice – transfer the case to a district in which the case could have been brought. See 28 U.S.C. § 1406(a). Dismissal, instead of transfer, is appropriate when the plaintiff's claims suffer from significant substantive problems; otherwise transfer is preferable. See Simpkins v. District of Columbia Government, 108 F.3d 366, 371 (D.C. Cir. 1997); see also Buchanan v. Manley, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998). Although courts "decline[ ] to decide the merits of the plaintiff's claim when it has already determined that it is an improper venue for adjudicating it," courts often "take a peek at the merits when deciding whether transfer is in the interests of justice." Roman–Salgado v. Holder, 730 F. Supp. 2d 126, 131 (D.D.C. 2010); Laukus v. United States, 691 F. Supp. 2d 119, 127 (D.D.C. 2010) (citing Phillips v. Seiter, 173 F.3d 609, 610-11 (7th Cir. 1999)). The decision to dismiss or transfer a case in the interest of justice is committed to the sound discretion of the district court. Naartex Consulting Corp. v. Watt, 722 F.2d at 789.

15

Courts typically find it more efficient, economical, and fair to transfer pro se complaints rather than to require a pro se plaintiff to re-file and re-serve his or her complaint in another district.  See Roland v. Branch Banking & Tr. Corp., 149 F. Supp. 3d 61, 68-69 (D.D.C. 2015); Chrishon-Skinner v. Jones, 2025 WL 1575674 at *7; Willis v. Green Tree Servicing, LLC, 156 F. Supp. 3d 121, 123 (D.D.C. 2015) ("A plaintiff who is proceeding pro se . . . 'merit[s] additional leniency' in deciding whether a case should be transferred." (internal citations omitted and alteration adopted)); Bond v. ATSI/Jacksonville Job Corps Ctr., 971 F. Supp. 2d 33, 36-37 (D.D.C. 2013) (holding that transfer, rather than dismissal, was especially warranted "when a plaintiff files a complaint pro se") (quoting James v. Verizon Servs. Corp., 639 F. Supp. 2d 9, 15 (D.D.C. 2009)); Patel v. Phillips, 933 F. Supp. 2d 153, 166 (D.D.C. 2013) (concluding that dismissal was "not appropriate in the circumstances of this case, particularly because plaintiff is proceeding pro se"); Coltrane v. Lappin, 885 F. Supp. 2d 228, 235 (D.D.C. 2012) ("[T]ransfer is particularly favored over dismissal when the plaintiff is proceeding pro se."); McQueen v. Harvey, 567 F. Supp. 2d 184, 188 (D.D.C. 2008) (noting that transfer was favored because the "plaintiff's status as a pro se plaintiff at the time of his filing also merit[ed] additional leniency"); cf. Haines v. Kerner, 404 U.S. 519, 520 (1972) (noting that pro se plaintiffs are "[held] to less stringent standards than formal pleadings drafted by lawyers"); Fletcher v. Reilly, 433 F.3d 867, 877 (D.C. Cir. 2006); Childers v. Mineta, 205 F.R.D. 29, 31 (D.D.C. 2001) (explaining that pro se litigants are given more latitude to correct defects in service of process and pleadings).

The Court finds that it is in the interests of justice to allow the pro se plaintiffs to pursue their case in the proper venue, the Middle District of Florida.  This resolution, rather than dismissal, is the "standard remedy for improper venue" and "preserv[es] a [plaintiff's] ability to

16

obtain review." Nat'l Wildlife Fed'n v. Browner, 237 F.3d. 670, 674 (D.C. Cir. 2001); see Chrishon-Skinner v. Jones 2025 WL 1575674 at 7 (transferring a case brought by a pro se plaintiff to the District of Maryland in part because the transfer "would not prejudice any party" given that defendants were domiciled in Maryland, and the plaintiff's claims related to her membership in a Maryland-based organization). The Court therefore will transfer this case rather than dismiss it.

Other than Mr. Pinkerton, who is a resident of Oregon, all of the plaintiffs and all of the defendants are domiciled in Florida and the alleged conduct took place in Florida. Plaintiffs have not made a convincing argument that Florida is an improper venue, instead asserting that key Federal Reserve witnesses reside in the District of Columbia and that various Florida offices are incapable of responding appropriately to the plaintiffs' claims. See Plaintiffs' Opp. ¶ 74. These attenuated statements do not convince the Court that plaintiffs will be prejudiced by a transfer. The Court therefore will transfer the case to the Middle District of Florida. This approach allows a single court to decide the entire controversy over both sets of defendants, and ultimately serves "the interest of justice." 28 U.S.C. § 1406(a).

## III.  TEMPORARY RESTRAINING ORDER

As noted above, plaintiffs seek a temporary restraining order against defendant Point Brittany only. Plaintiffs contend that Point Brittany is negotiating and executing leases that "[i]nclude Use Restrictions," and that defendants are reverting to a "delegate vote only" posture for commercial-property "changes." Emerg. Mot. Temp. Rest. Ord. at 2. Plaintiffs assert that this conduct would exclude plaintiffs and other owners similarly situated from the decision-making process regarding Point Brittany property. Id.

17

The Court will deny plaintiffs' Motion for a Temporary Restraining Order before it transfers the case to the Middle District of Florida. "Though a court without jurisdiction over an underlying case cannot issue or enforce a temporary restraining order," the Court may exercise its discretion to deny a motion for a TRO. Chrishon-Skinner v. Jones, 2025 WL 1575674 at *7 (citing Barwood, Inc. v. District of Columbia, 202 F.3d 290, 294-95 (D.C. Cir. 2000).

Temporary restraining orders and preliminary injunctions are extraordinary remedies governed by the familiar four-factor Winter test: (1) likelihood of success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) a balance of equities in the movant's favor; and (4) accord with the public interest. Winter v. NRDC, 555 U.S. 7, 20 (2008); see also Archdiocese of Washington v. Wash. Metro. Area Transit Auth., 897 F3d. 314, 321 (D.C. Cir. 2018); Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (noting that a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief") (quoting Winter v. NRDC, 555 U.S. at 22).

### A. Likelihood of Success on the Merits

Plaintiffs argue that the requirement of likelihood of success on the merits ("or at minimum serious questions") is met through attached exhibits which purportedly show "a recorded vote-gate and an execution plan that omits that gate." Emerg. Mot. Temp. Rest. Ord. ¶ 22, Ex. A at 1, Ex. B at 3. In other words, plaintiffs allege that Point Brittany circumvented the voting infrastructure and obstructed owners from voting on key issues. Defendant Point Brittany urges the Court to deny the motion, both for lack of personal jurisdiction over the case, and because Point Brittany had already cancelled the board meeting identified in plaintiffs' motion,

18

rendering moot the issues identified in the motion.  Point Brittany Lim. Resp. Emerg. Mot. at 3-4.

Of the four Winter factors, likelihood of success on the merits is considered the most important.  See Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014); accord Bailey v. Fed. Bureau of Prisons, Civil Action No. 24-1219 (PLF), 2024 WL 3219207, at *3 (D.D.C. June 28, 2024).  Indeed, "a failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion."  Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009)); see also M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 117 (D.D.C. 2018).

Proving likelihood of success on the merits "includes demonstrating a likelihood of successfully establishing jurisdiction."  Media Matters for Am. v. Paxton, 732 F. Supp. 3d 1, 12-13 (D.D.C. 2024); see Kurtz v. United States, Civil Action No. 10-1270 (RWR), 2010 WL 3060989, at *1 (D.D.C. Aug. 3, 2010) ("[A] federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit.") (citation and quotation marks omitted).  At the preliminary injunction stage, a plaintiff can meet this burden by showing "a reasonable probability that personal jurisdiction can ultimately be established."  SEC v. Lines Overseas Mgmt., Ltd., Civil Action No. 04-0302 (RWR), 2005 WL 3579139, at *2 (D.D.C. Jan. 3, 2006).  To satisfy this burden, a plaintiff must be able to point to "specific acts connecting defendant with the forum."  First Chicago Int'l v. United Exch. Co., Ltd., 836 F.2d at 1378 (quotation omitted).

Plaintiffs have not carried their burden of establishing jurisdiction and therefore cannot meet the requirement of likelihood of success on the merits.  See Monbo v. Small

Business Admin., Civil Action No. 24-cv-1872 (APM), 2024 WL 5056377, at *1 (D.D.C. Dec. 10, 2024) (denying plaintiff's request for an injunction to direct defendant Small Business Administration to act on the application for renewed participation in the Hardship Accommodation Plan because plaintiff's complaint did not establish subject matter jurisdiction); Khatib v. All. Bankshares Corp., 846 F. Supp. 2d at 25 ("The cardinal principle that the district court is 'powerless to proceed' in the absence of personal jurisdiction applies with no less force when the court is presented with a motion for a preliminary injunction.") (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. at 382).

### B. Irreparable Harm Absent Relief

Plaintiffs argue that Point Brittany's alleged changes to the voting scheme "will create third party rights and reliance," which "will impair effective relief in the future." See Emerg. Mot. Temp. Rest. Ord. ¶ 23-28. Plaintiffs also maintain that because the unwinding of PBAC-approved leases post-execution could be inequitable or impracticable due to third-party reliance, the emergency order is necessary to prevent a fait accompli. Id. ¶ 5; see Fund for Animals, Inc. v. Espy, 814 F. Supp. 142, 151 n.10 (D.D.C. 1993). The Reinhardt and Point Brittany defendants argue that plaintiffs have failed to show that any injury is likely to occur. Reinhardt Lim. Resp. Emerg. Mot. at 3-4; Point Brittany Lim. Resp. Emerg. Mot. at 3-5.

A petitioner seeking a TRO "must show that the injury will be impossible to correct or redress after it occurs." Foundation Health Fed. Servs. v. United States, Civil Action No. 93-1717 (NHJ), 1993 WL 738426, at *2 (D.D.C. Sept. 23, 1993). To make the required showing of irreparable harm, a moving party must establish that its injury satisfies a two-part test. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006). First, the injury must be "both certain and great," "actual and not theoretical," and "of such

20

imminence that there is a 'clear and present' need for equitable relief." Id. at 297-98 (quoting Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)). "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur." Wisconsin Gas v. FERC, 758 F.2d at 674; see TD Int'l, LLC v. Fleischmann & Tertium Datur Int'l, LLC, 639 F. Supp. 2d 46, 48 (D.D.C. 2009) ("Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'") (quoting Wisconsin Gas Co. v. FERC, 758 F.2d at 674). Instead, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Wisconsin Gas v. FERC, 758 F.2d at 674; see State of New Mexico v. Musk, 769 F. Supp. 3d 1, 6 (D.D.C. 2025) (holding that although "DOGE's unpredictable actions have resulted in considerable uncertainty and confusion," the "possibility that [d]efendants may take actions that irreparably harm [p]laintiffs is not enough," and denying the TRO motion because it remained "uncertain" how and when the harms would take place). Moreover, "the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin." Wisconsin Gas Co. v. FERC, 758 F.2d at 674.

Second, "the injury must be beyond remediation." Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297. Thus, "'[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.'" Id. at 297-98 (quoting Wisconsin Gas Co. v. FERC, 758 F.2d at 674). This is a high burden: economic loss in and of itself, generally, does not constitute irreparable harm. Wisconsin Gas Co. v. FERC, 758 F.2d at 674; Varicon Int'l v. OPM, 934 F. Supp. 440, 447 (D.D.C. 1996). Neither do alterations in ownership structure that might result in modifications contrary to plaintiffs' pecuniary interest establish irreparable harm.

21

See Nat'l R.R. Passenger Corp. (Amtrak) v. Sublease Int. Obtained Pursuant to Assignment & Assumption of Leasehold Int. Made as of Jan. 25, 2007, No. 22-CV-1043 (APM), 2024 WL 3443596, at *9 (D.D.C. July 15, 2024) (holding that the "temporary loss of the status quo ownership structure" was not irreparable, because even though Amtrak could negotiate lease modifications, any claimed harm at the time was "pure conjecture"). Certain harms become "serious and obviously irreparable once the contemplated action becomes a fait accompli." Fund for Animals, Inc. v. Espy, 814 F. Supp. at 151 n.10. But, again, such harm must be certain to occur in the near future as a direct result of the threatened action. Wisconsin Gas Co. v. FERC, 758 F.2d at 674; Varicon Int'l v. OPM, 934 F. Supp. at 447.

A "failure to show any irreparable harm" constitutes grounds for denying the motion for a preliminary injunction, "even if the other three factors entering the calculus merit such relief." Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297 (citing Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1210–11 (D.C. Cir. 1989)). Plaintiffs' proffered threat of imminent irreparable harm to the voting scheme—the establishment of "third party rights and reliance," thus "impairing effective relief"—is attenuated and speculative and therefore does not the meet the standard for demonstrating irreparable harm absent relief. Emerg. Mot. Temp. Rest. Ord. at ¶ 5. In Power Mobility Coal. v. Leavitt, plaintiffs sought to enjoin the U.S. Department of Health and Human Services from enforcing new rules governing reimbursement under Medicare for motorized scooters and power wheelchairs. Power Mobility Coal. v. Leavitt, 404 F. Supp. 2d 190, 192 (D.D.C. 2005). Plaintiff alleged that if the new rules took effect as planned, defendant would be empowered to "deny more claims under the new procedures," and that plaintiffs would effectively be "forced out of business." Id. at 205. The court denied the emergency motion, finding that the plaintiff had not demonstrated that

22

irreparable harm was "certain, great, and actual." Id. at 204. Rather, the plaintiff claimed "at best, remote and speculative" imminent irreparable harm, and that the claim that the rules change would result in increased claim denials was "unfounded." Id. at 205. The court also considered that the plaintiffs made that prediction without having ever filed a claim for reimbursement and having it denied under the rule, nor adhering to the claim presentment requirement and the exhaustion of available administrative remedies. Id.

Similarly, here plaintiffs allege that once defendant Point Brittany's rule changes are in place, "[d]efendants can be expected to argue that unwinding is inequitable or impracticable due to third-party reliance," and that the matter would become a "fait accompli." Emerg. Mot. Temp. Rest. Ord. ¶ 5. In the absence of "actual and not theoretical" harms, however, plaintiffs' claims of irreparable harm are insufficient. See Wisconsin Gas Co. v. FERC, 758 F.2d at 674.

In addition, plaintiffs claim that defendant Point Brittany undertook a new "delegate vote only" regime for commercial-property "changes," and released a board packet describing a defined workflow to negotiate and execute leases that "include use restrictions." Emerg. Mot. Temp. Rest. Ord. ¶ 4(b). Defendant Point Brittany states, however, that the board meeting notice and agenda referenced in plaintiffs' motion was indefinitely cancelled until further notice. Point Brittany Lim. Resp. Emerg. Mot. at 1-2. It therefore is unclear how a TRO against Point Brittany would redress any alleged harm. See Chrishon-Skinner v. Jones, 2025 WL 1575674 at *8 (denying plaintiff's requested TRO prohibiting defendant from taking any retaliatory action against plaintiff that would adversely affect plaintiff's membership rights in an organization in part because plaintiff's membership rights had already been revoked four months prior, so a TRO would not redress the alleged harm); Power Mobility Coal. v. Leavitt, 404 F.

23

Supp. 2d at 204.  The cancellation of the new voting scheme implementation has obviated the alleged risk of third-party reliance and impairment of future relief.  Emerg. Mot. Temp. Rest. Ord. ¶ 23-28.  As such, plaintiffs have not adequately shown irreparable harm.

### C.  Public Interest and Balance of Equities

Because the plaintiffs have established neither the likelihood of success on the merits nor irreparable harm, the Court will not dwell on the public interest factor.  Plaintiffs contend that the public interest in this case derives from the "federal interest in protecting elderly and medically vulnerable owners from ongoing financial and records abuse," specifically "where state officials allegedly shelved complaints—and where relief requires federal-level coordination."  Compl. ¶ 27.

Success on the merits and public interest are intertwined and complementary. The absence of likelihood of success on the merits tilts the balance of the public interest against the TRO petitioner.  Hubbard v. United States, 496 F. Supp. 2d 194, 203 (D.D.C. 2007) ("[I]t is in the public interest to deny injunctive relief when the relief is not likely deserved under law." (quoting Qualls v. Rumsfeld, 357 F. Supp. 2d 274, 287 (D.D.C. 2005)); see also Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The final preliminary injunction factor, the public interest, . . . is inextricably linked with the merits of the case.").

In large part due to their inability to plead likelihood of success on the merits, plaintiffs have not demonstrated that the public interest or balance of the equities weigh in their favor.  Accordingly, and for the reasons explained in this Opinion, the Court will deny plaintiffs' Motion for a Temporary Restraining Order [Dkt. No. 36].

IV. CONCLUSION

For the foregoing reasons, the Court DENIES defendants' Motions to Dismiss [Dkt. Nos. 8, 12, 14] and DENIES plaintiffs' Motion for a Temporary Restraining Order for Expedited Preliminary Injunction Proceedings [Dkt. No. 36]. As this Court has no jurisdiction, the Court will TRANSFER the case to the Middle District of Florida. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

Date:
2026.06.26
11:55:08 -04'00'

PAUL L. FRIEDMAN
United States District Judge

DATE: June 26, 2026

25